IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br> v. <br><br> **GREGORY ALLEN KLINE**, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** <br><br> Case No. 2:23-CR-00284-JNP <br><br> District Judge Jill N. Parrish |

Before the court is a Motion to Suppress Evidence filed by Defendant Gregory Allen Kline ("Kline"). Kline moves to suppress evidence obtained as the result of a traffic stop on June 14, 2023. Kline asserts that evidence from the traffic stop must be suppressed because the scope of the stop was unlawfully extended by West Valley City Police Detective Tyler Horne ("Det. Horne"). For the reasons stated herein, Kline's motion is **DENIED**.

### FINDINGS OF FACT

On the evening of June 14, 2023, at approximately 8:15 p.m., Det. Horne stopped Kline's black Hyundai Sonata ("the vehicle") after observing it swerve in and out of its traffic lane. As Det. Horne turned on his lights to initiate the stop, he requested a K-9 unit to respond to the scene. Det. Horne approached the vehicle on the passenger side and noticed three other passengers in the vehicle in addition to Kline. At 8:16 p.m., Det. Horne asked Kline for his license and proof of insurance. Kline gave Det. Horne his license but informed Det. Horne that he would have to look up his insurance on his phone. About five minutes passed as Kline attempted to find his proof of insurance. At 8:19 p.m., Det. Horne requested an additional officer through dispatch to compensate for the number of vehicle occupants.

Prior to the stop, Det. Horne ran the vehicle's license plate through a database in his patrol car at 8:06 p.m. and 8:13 p.m. The database record included information regarding the vehicle's registration and owner, whether the vehicle was stolen, active warrants tied to the vehicle, and whether the vehicle was insured. However, prior to the stop, Det. Horne did not thoroughly review the information on the database record. In running the license plate prior to the stop, he was primarily focused on whether the plate number matched the make and model of the car. Thus, at the time Det. Horne asked for Kline's insurance at the beginning of the stop, he did not know whether he would be able to confirm Kline's insurance in the database.

Det. Horne continued to wait at the passenger side of the vehicle as Kline attempted to find proof of insurance because he wanted to give Kline an opportunity to avoid a citation, and he felt safer monitoring the occupants of the vehicle while he waited for assisting officers. Given the number of occupants in the car and the fact that he was alone, Det. Horne did not feel comfortable returning to his patrol car where he would have to focus on his computer to run information through the database without assisting officers present at the scene.

At 8:21 p.m., assisting officers, including the requested K-9 unit, arrived and Det. Horne instructed them to have the occupants of the vehicle exit. Kline still had not located his insurance at this time. By 8:22 p.m., Det. Horne had returned to his patrol car to verify Kline's vehicle registration, outstanding warrants, and criminal history. During these inquiries, Det. Horne confirmed the vehicle's insurance in the database. Det. Horne then proceeded to run the passengers' information through his databases.

At 8:26 p.m., Det. Horne received a positive indication ("thumbs up") of drugs present in the vehicle from the on-scene K-9 handler, Sergeant Palmer. Based on the positive indication, assisting officers began to search the vehicle. In their search, the officers discovered a case of a

substance they recognized as methamphetamine. Fourteen minutes passed between the initiation of the traffic stop and discovery of the methamphetamine.

## LEGAL CONCLUSIONS

Kline does not contest the validity of the initial stop. Rather, he alleges that Det. Horne unreasonably prolonged the traffic stop to wait for Kline to find his proof of insurance thereby violating his Fourth Amendment right. The court disagrees and finds that Det. Horne did not unconstitutionally prolong the stop.

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). In addition to addressing the violation, an officer may conduct "ordinary inquiries incident to the traffic stop." *Id.* at 355 (holding that ordinary inquiries are within the scope of the officer's mission and thus do not unreasonably prolong a traffic stop). Such ordinary inquiries include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.*

Because "[t]raffic stops are especially fraught with danger to police officers," officers may also "take certain negligibly burdensome precautions" in the interest of safety. *Id.* at 356 (citation omitted). Under this line of reasoning, courts have permitted officers to routinely conduct criminal history checks during a traffic stop. *See United States v. Mayville*, 955 F.3d 825, 830 (10th Cir. 2020). However, "[o]n scene investigation into other crimes," such as a dog sniff, detours from the traffic stop mission and thus unconstitutionally prolongs the stop. *Rodriguez*, 575 U.S. at 356.

Here, the on-scene K-9 indicated a positive drug identification during the time Det. Horne was conducting ordinary inquiries incident to the traffic stop. Therefore, the deployment of the K-9 unit did not detour from the traffic stop. However, Kline argues that Det. Horne's decision to

3

wait for Kline to find proof of insurance on his phone created a delay that allowed the K-9 unit to arrive and conduct the dog sniff. This, Kline argues, was unreasonable because Det. Horne could have verified Kline's insurance on the database located in his patrol car. But one of Det. Horne's reasons for waiting at the vehicle rather than returning to his patrol car relates directly to officer safety, not to his desire to confirm whether Kline had insurance. At the initiation of the traffic stop, Det. Horne was outnumbered four to one. For his own safety, he did not want to take his attention away from the vehicle until assisting officers arrived on scene. Furthermore, Det. Horne only waited for 5 to 6 minutes in doing so, which made his decision a "negligibly burdensome precaution[]" in the interest of safety. *Rodriguez*, 575 U.S. at 356. This reasoning, independent of whether Det. Horne was reasonable in asking for Kline's proof of insurance, justifies Det. Horne's decision to wait.

Even if Det. Horne's actions were not in the interest of officer safety, asking Kline to provide proof of insurance rather than using the database was also reasonable. Although officers are confined to activities within the scope of the traffic stop mission, courts are not required to "second-guess the logistical decisions of officers so long as their actions were reasonable and diligently completed within the confines of a lawful traffic stop." *United States v. Mayville*, 955 F.3d 825, 827 (10th Cir. 2020) (holding that a nineteen-minute traffic stop "did not exceed the time reasonably required to execute the tasks relevant to accomplishing the mission of the stop.") Courts have stressed that "'[t]he risk of harm to both the police and the occupants of a stopped vehicle is minimized . . . if the officers routinely exercise unquestioned command of the situation.'" *United States v.* Hayes, 62 F.4th 1271, 1278 (10th Cir. 2023) (quoting *Arizona v. Johnson*, 555 U.S. 323, 330 (2009)).  In *Mayville*, the Tenth Circuit held that a trooper's decision to run a criminal history check through dispatch, which took longer than running the same check through

4

the database in his patrol car, did not unreasonably prolong the stop. 955 F.3d at 831. Similarly, Det. Horne's decision to wait for Kline to provide proof of insurance rather than returning to his patrol car to look up Kline's insurance on the database did not unreasonably prolong the stop.

Finally, even if Det. Horne had known Kline was insured prior to the stop, asking for proof of insurance would have still been reasonable. Utah law requires a person operating a motor vehicle to have proof of insurance "in the person's immediate possession" and to "display it upon demand of a peace officer." UTAH CODE ANN. § 41-12a-303.2 (2)(a). A driver is exempt from this provision "if the person is operating . . . a government owned or leased motor vehicle; or . . . an employer-owned or leased motor vehicle and is driving it with the employer's permission." *Id.* Kline falls under neither exemption.

However, Kline points to a provision in the Utah code that prevents officers from issuing citations where a driver does not have proof of insurance readily available. Officers are prohibited from citing or arresting a person who violates the proof of insurance requirement if the "Uninsured Motorist Identification Database Program… indicates that the vehicle or driver is insured." UTAH CODE ANN. § 41-12a-303.2 (2)(e)(ii). Assuming Det. Horne knew Kline's insurance status prior to the traffic stop, Kline argues that Det. Horne unreasonably asked for Kline's insurance, knowing that he could not cite Kline for violating the statute. However, this prohibition is not an exception to the substantive requirement. The statute plainly reads that a driver must carry insurance on his immediate person and display it upon demand by an officer. The statute provides exemptions to this requirement, but none of those exemptions include whether the database can verify the driver's insurance status. *See* UTAH CODE ANN. § 41-12a-303.2 (2)(a).

Moreover, a path to avoid a citation does not relieve Kline of the underlying violation of the law. *See United States v. Meadows*, 970 F.3d 1338, 1341 (10th Cir. 2020) (holding that the

5

defendant's ability to avoid an infraction by obtaining a safety inspection within 14 days does not relieve her of her vehicle equipment violation at the time it was discovered). If Kline did not possess proof of insurance on his immediate person while operating a vehicle, he has violated Utah law. Therefore, it was not unreasonable for Det. Horne to ask Kline for proof of insurance as required under Utah law, even if he could not ultimately cite Kline for the violation.

Regardless, at the time Det. Horne asked for Kline's insurance, he did not know whether he would find Kline insured in the database, thereby excusing Kline from a citation. Det. Horne did not verify that Kline had insurance until he returned to his patrol car after assisting officers arrived on scene. Therefore, Det. Horne was reasonable in requesting that Kline provide his proof of insurance as required under Utah law even if he later discovered that he could not cite Kline for an infraction.

## CONCLUSION AND ORDER

Consistent with this Memorandum Decision and Order, Defendant Kline's Motion to Suppress (ECF No. 21) is **DENIED**.

DATED October 21, 2024

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge